[No. 19905.  Department Two.  July 21, 1926.]

## CLARENCE PETITT, *Respondent*, v. RIVERSIDE IRRIGATION DISTRICT, *Appellant*.[1]

[1] WATERS AND WATER COURSES (92)—IRRIGATION DISTRICTS—REDEMPTION FROM SALE FOR ASSESSMENTS—REVIEW. Where the owner of the property in an irrigation district had no notice of the assessment and sale of the property and no intention of allowing the assessment to go unpaid, he was entitled to redeem the property where it was bought in and still owned by the irrigation district; and the action of the board of directors in refusing to allow redemption will be set aside as arbitrary and capricious, amounting to fraud, under Rem. Comp. Stat., § 7445, authorizing such redemption, if in the judgment of the board of directors, the sale has resulted from unavoidable accident, inadvertency, and without intent on the part of the owner to permit the assessment to become delinquent; where it appears that the board refused such redemption simply for the purpose of enabling the district to resell the property at a profit.

[2] WATERS AND WATERCOURSES (92)—IRRIGATION DISTRICTS—ASSESSMENTS—REDEMPTION—STATUTES—CONSTRUCTION. Rem. Comp. Stat., § 7445, providing for redemption of lands within an irrigation district, sold for non-payment of assessment, and providing that the board "may" allow such redemption, if in the judgment of the board the sale resulted from unavoidable accident, inadvertency and without intent to permit the assessment to become delinquent, will be construed to mean "must" allow the redemption, in a case within the statute; in view of the remedial nature of the act and the fact that forfeitures are not favored, and the evident purpose of the statute.

Appeal from a judgment of the superior court for Okanogan county, Neal, J., entered January 14, 1926, upon findings in favor of the plaintiff, in an action to enforce a right of redemption from an irrigation district tax sale, tried to the court.  Affirmed.

*P. D. Smith,* for appellant.

*W. H. Patterson,* for respondent.

[1] Reported in 247 Pac. 1030.

MACKINTOSH, J.—On June 7, 1919, the respondent took a mortgage upon agricultural land in Okanogan county, and foreclosed the same on July 17, 1924. He purchased the land at the sheriff's sale on August 17 of the same year. On July 10, 1922, there was created within the boundaries of Okanogan county an irrigation district, and in that district was included the land upon which the respondent had the mortgage and which he later secured under sheriff's deed. For the year 1922, irrigation assessments were levied upon what we shall call the respondent's land, and these assessments not being paid, the appellant became entitled to a deed to the land on February 27, 1925, and the deed was actually issued on August 7, 1925. On August 15, 1925, some months after respondent's period for redemption had expired, he made application to the appellant to redeem from the irrigation district tax sale. He made tender of the amount due, with penalty and interest, and accompanied his application with an affidavit setting out that he had not known that any assessments were levied on it; that, if he had so been informed, he would have paid the assessments, and that he had no intention of permitting the assessments to become delinquent and the land to be sold. The appellant refused to permit the respondent to redeem, although the district was still the owner of the land under the tax sale. The respondent thereupon began this action, in which he tendered the payment of all assessments, penalty, costs and interest, praying that he be allowed to redeem from the irrigation district tax sale, and that the district be compelled to accept his tender and make conveyance, and that his title be quieted. After hearing before the court, the prayer of his complaint was granted, and the irrigation district has appealed.

Section 7445, Rem. Comp. Stat. [P. C. § 3223], deals

with the sale of property within irrigation districts for non-payment of assessments, and contains a provision that, when land has been sold to the district and the district has received a deed from the county treasurer, if, in the judgment of the board of directors of the district, the sale has resulted from unavoidable accident, inadvertency or misfortune and without intent, on the part of the owner or person entitled to make redemption, to permit said assessments to become delinquent and the land to be sold, the board of directors "may . . . cause said land to be reconveyed to the owner or person entitled to redemption within the period of one year after deed is issued, upon the payment" of the amount of the assessments, penalty, costs, interest, and an additional penalty of twenty-five per cent of the amount for which the land was sold; and further provided that the act should apply to all sales made to an irrigation district prior to the date when the act became effective, and that the owner, or other person rightfully seeking redemption, shall be entitled to the benefit of this provision until one year subsequent to the date the act became operative.

[1] It is the appellant's claim that the court has no right to interfere with the judgment of the board of directors, and that the directors in this case having found against the respondent's claim that he had allowed his property to be sold through accident, inadvertency or misfortune, the court is powerless to grant any relief.

It has been often decided (so often that the citation of authorities is superfluous), that the courts will interfere with the acts of administrative tribunals, where those acts have been arbitrary and capricious and have amounted in law to fraud. Such was the act of the board in this instance. It appears from the record that the board had before it for consideration no other evi-

dence than the affidavit of the respondent, and that members of the board testified that they believed the contents of that affidavit; and still they refused to permit a redemption. This refusal was based, apparently, upon no other reason than that, having acquired this property, the board saw an opportunity and, in fact, had already made an arrangement to sell the property so as to net a very substantial profit to the district. The trial court, in a vigorous memorandum opinion, in which he sets forth considerable of the pertinent testimony given by the members of the board of directors, analyzes the situation as follows:

"It appears more or less all through the testimony that the board was of the opinion that it could arbitrarily deal with its deeded land taken over on delinquent assessments, as it might please. It also develops from the testimony that the members of the board emphasized their feeling of allegiance to the district and that such allegiance demanded that it save for the district the $1,400 over the assessments, for the district, they believing the board had that right if it so desired. The board also seem to believe that since the assessment was not made against Petitt he had no more rights than any other would be purchaser; that since he was not on the assessment rolls he had no right to redeem.

"The testimony of J. B. Williams, secretary of the board, is rather significant and indicates the disposition of the board to conclude that since they had a deed to the land they could dispose of it as they saw fit, either deed it to Petitt or to any other person they might choose. I think it clearly appears that the board concluded that since Petitt was not on the assessment rolls, he stood in the position of any other third party and had no legal right to redeem, and yet it appears that the board did permit J. E. Ford to redeem a tract of land not standing in his name, but assessed to another. Ford was not on the assessment roll. All applicants were permitted to redeem except O'Neil and he was acting for another person and did not own the land. It

also appears that Mackie redeemed land that he bought, but he was not on the roll.

"It appears that during the time the board held plaintiff's petition it had tacitly agreed to sell the land in question for $1,750, approximately $1,400 to the clear in favor of the district. Considering the case, all the testimony and circumstances show that the board concluded that he had no right to redeem because he was not on the assessment roll; that under the law the deed gave them the legal right to dispose of the land as to them might appear to be for the best interest of the district. He was the exception. All the other petitioners were permitted to redeem, except one, O'Neil, for special reasons. The directors say the affidavits were all about the same; that they believed plaintiff's affidavit. It seems that the directors were exercising their discretion in developing some excuse for refusing the redemption under the feeling of allegiance to the district, rather than following the legislative intent as expressed in the statute.

"The act means something to the land owner, and his application to redeem should not be refused simply because it is profitable to the district to the extent of $1,400.

"I understand the directors made no contention as to the tender. The treasurer reports $300.16 assessments, interest and penalty to August 15, 1925."

[2] It is further claimed, however, that, in any event, the right of a property owner to redeem lies within the discretion of the irrigation district officers, for the reason that the statute says "the board of directors *may* . . . cause said land to be reconveyed to the owner." The word "may" has many times been construed to have the force of the word "must," and such construction seems to be called for by this statute. Taking into consideration the fact that forfeitures are not favored, that the object of the assessment law is to secure the payment of assessments and not to procure the title to property for the irrigation district, a study of the legislative enactments relating to the

levying and collection of irrigation district assessments, the language of this section itself, the fact that it is a remedial act, all lead inevitably to the conclusion that it was the intent of the lawmakers in passing this act that, where an irrigation district had acquired title to property by reason of the failure of the owner to pay an assessment because of unavoidable accident, inadvertency or misfortune, if within one year after the title had been so secured the owner should pay all the assessments due, with interest and costs and the additional penalty of twenty-five per cent of the amount for which the land was sold to the district, he should be entitled to recover his property. A contrary intention would have to be very clearly expressed before the statute would be given the effect claimed for this one by the appellant. In the instant case, it is conceded that the respondent had no intention of allowing the irrigation assessments to go unpaid, that it was from his ignorance of the fact that the assessment had been made, or that his property was within the district, that the sale ever took place; and no reason in good conscience or within the law can be presented why he should not, upon recompensing the district for all that is due it, including an additional penalty, be restored to his possession.

The trial court is correct in holding that the acts of the district were arbitrary and capricious, subject to review by the court, and that, when the condition provided for in the statute was shown to exist, it was the duty of the district to make reconveyance. That decree is therefore affirmed.

TOLMAN, C. J., PARKER, MITCHELL, and ASKREN, JJ., concur.