[No. 20503.  Department One.  April 18, 1927.]

BURBANK IRRIGATION DISTRICT No. 4 et al., *Respondents*,
v. C. C. DOUGLASS, *as Treasurer for Walla
Walla County, Appellant.*[1]

[1] WATERS AND WATER COURSES (91)—IRRIGATION—BONDS AND WARRANTS—IRRIGATION DISTRICTS—DISPOSITION OF TAXES FOR SPECIAL PURPOSE.  Irrigation warrants for operating expenses are not to be paid in the order of their registration regardless of the year in which they are issued; in view of Rem. Comp. Stat., §§ 7440, 7442 and 7453, evidencing the intention to require irrigation districts to operate upon a cash basis and requiring the board, at the time of the annual levy, to estimate the amount of the probable delinquencies and to levy sufficient to cover the same and to cover delinquencies for any preceding year; the act in its entirety, the necessity for water each year, and its general purpose, indicating that the current expense warrants for operation and maintenance for the present year should have the first call on the money raised by the levy and the assessment for the expense fund of that year.

Appeal from a judgment of the superior court for Walla Walla county, Sharpstein, J., entered January 5, 1927, in favor of plaintiff, upon overruling a demurrer to the answer of defendant, in an action to enjoin the wrongful expenditure of a special irrigation fund. Affirmed.

*W. G. Coleman* and *A. J. Gillis,* for appellant.
*G. S. Bond* and *B. B. Horrigan,* for respondents.

[1]Reported in 255 Pac. 360.

FRENCH, J.—This action was instituted by J. W. Hereford as a local land owner and water user, and also as representative of other land owners within the Burbank Irrigation District, and the irrigation district itself, against the county treasurer of Walla Walla county, the complaint being as follows:

I.

"That Burbank Irrigation District No. 4 of Walla Walla county, Washington, is a municipal corporation, organized and existing under and by virtue of the laws of the state of Washington.

II.

"That said Burbank Irrigation District No. 4, was organized as an irrigation district in the year 1918; that it comprises some 10,000 acres of land, and was organized for the purpose of furnishing water for irrigation of lands within said district; that no crops can be grown on the said lands within said district except by irrigation.

III.

"That a large part of the owners of lands within said district have failed to pay the assessments levied thereon to meet the interest on the outstanding bonds of said district and the assessments levied yearly for the operation and maintenance costs for the ensuing year; that because of such failure a very large part of the land has been taken over and is now owned by said irrigation district.

IV.

"That since the formation of said district each year the board of directors have levied an assessment against the lands within said district in an amount deemed sufficient to raise the ensuing annual interest on the outstanding bonds; and said board of directors have also levied each year an amount deemed sufficient to pay for the operation and maintenance costs of said district each year, together with an amount for all probable delinquencies on said levy.

## V.

"That because of the failure of the owners of much of the land within said district to pay the assessments levied thereon maintenance warrants of said district have been issued, registered and unpaid to such an amount that there are at the present time outstanding warrants of said district for maintenance and operation in the sum of approximately $100,000.

## VI.

"That the practice of the treasurer of Walla Walla county, Washington, is to call and pay the warrants of said district according to the numerical order of their issue and registration; that money received by him from the assessments made for the operation and maintenance costs of the said irrigation district for any ensuing year is not utilized by him to pay the warrants issued for the operation and maintenance costs incurred for that particular year, but he uses and applies all funds for maintenance and operation collected, for payment of registered warrants, regardless of the year for which the funds collected were levied. That under the plan followed by the said county treasurer, no maintenance warrants of said irrigation district are called within five or ten years from the date of their issue and registration, and they are regarded as of little value; that no banking or financial institution will handle said warrants; that the employees of said district refuse to take said warrants in payment of their salaries and the directors of said district are unable to hire the necessary employees, or to purchase the necessary materials and supplies for said district, or to meet the necessary and essential yearly maintenance costs of said district, by issuing therefor warrants of said district as provided by law.

## VII.

"That the board of directors of said Burbank Irrigation District No. 4, has levied an assessment of seven dollars and fifty cents per acre on the irrigable lands of the district, for the operation and maintenance costs of said district for the year 1927; that the said treasurer of Walla Walla county has been requested to set

aside funds received from this levy and apply the same to maintenance costs for said year 1927 only; but said defendant, county treasurer, has refused this request and has informed plaintiffs that any moneys received by him from said assessment shall be used by him to call and pay the outstanding warrants of said district according to their outstanding numerical order; and that until all warrants now issued are paid none of said money shall be used by him to pay for the operation and maintenance costs of said district for the ensuing year of 1927. That if the money is so used, then Burbank Irrigation District No. 4 cannot function as an irrigation district, and can supply no water for irrigation or other purposes for any of the lands within said district for the year 1927; that no money is available to meet said expenses and there is no other way to meet the necessary operating expenses of the district.

VIII.

"That if the money received from the assessment made for the operation and maintenance costs for the year 1927 is used by the said treasurer of Walla Walla county to call and pay warrants issued for operation and maintenance of said district, then said Burbank Irrigation District No. 4 will be able to operate and function as a district and furnish water for irrigation of lands therein, and will be able to hire the necessary employees and purchase the necessary supplies and materials and pay for said service and materials with the warrants of said district.

IX.

"That the plaintiff, J. W. Hereford, alleges that he is the owner of twenty-five acres of land within said district on which he has paid all assessments levied by said irrigation district; that there are many other similarly situated too numerous to join in this action and that he therefore sues in his own behalf and in behalf of the other owners of land within said district whose interests are identical with his; that said irrigation district, through its board of directors, has levied an assessment of seven dollars and fifty cents an acre against the plaintiff's land and the lands of other

owners therein for the operation and maintenance costs of said district for the year 1927; that if this plaintiff, and others similarly situated, pay to the treasurer of Walla Walla county, Washington, the assessment levied for the operation and maintenance of the district for the year 1927, and which he and they must pay, and the treasurer of Walla Walla county shall utilize the money thus derived to pay warrants issued many years prior hereto, then the district will be unable to function as a district for the year 1927, and no water shall be furnished to this plaintiff and those similarly situated with him, for the irrigation of his lands and he will thus suffer irreparable injury, and his lands will be assessed for a benefit which he cannot receive; that the assessments heretofore made each year by Burbank Irrigation District No. 4 against the land of this plaintiff and those similarly situated with him have equalled the maximum benefits received by him and those similarly situated and the said assessment levied for 1927 will equal the maximum benefits to be received by him and others from the operation of said district, and any utilization of the assessment levied for the operation and maintenance of said district for the year 1927 in the payment of warrants issued in prior years would be without any benefit whatever to this plaintiff and those similarly situated.

## X.

"That Burbank Irrigation District No. 4, J. W. Hereford and all those similarly situated would suffer irreparable injury if Burbank Irrigation District No. 4 should cease to operate as a district and no water be furnished for the year 1927 for the irrigation of lands within said district, and said irreparable injury will result if the said treasurer of Walla Walla county is not enjoined from utilizing any of the funds derived from the assessment for operation and maintenance of said district for the year 1927 in payment of warrants issued for prior years, and further if he is not compelled to utilize all of said money derived from the levy for 1927 as aforesaid for the calling and pay-

ment of warrants issued for the operation and maintenance costs of said district during the year 1927.''

To this complaint, a demurrer was interposed, which was overruled, and the defendant electing to stand on his demurrer, judgment was entered in accordance with the prayer of the complaint. This appeal follows.

The real question in this case is, shall warrants for operating expenses be paid in the order of their registration, regardless of the year in which they were issued, or shall such warrants when issued constitute a first claim on the expense fund for that year?

The powers and duties of irrigation districts, in so far as applicable to this case, are contained in Rem. Comp. Stat., § 7440 [P. C. § 3218].

''Section 7440. The board of directors shall in each year before said roll is delivered by the secretary to the respective county treasurers, levy an assessment sufficient to raise the ensuing annual interest on the outstanding bonds, and all payments due or to become due in the ensuing year to the United States or to the State of Washington under any contract between the district and the United States or the state of Washington accompanying which bonds of the district have not been deposited with the United States or the state of Washington as in this act provided. Beginning in the year preceding the maturity of the first series of the bonds of any issue, the board must from year to year increase said assessment for the ensuing year in an amount sufficient to pay and discharge the outstanding bonds as they mature. Similar levy and assessment shall be made for the expense fund which shall include operation and maintenance costs for the ensuing year. The board shall also at the time of making the annual levy, estimate the amount of all probable delinquencies on said levy and shall thereupon levy a sufficient amount to cover the same and a further amount sufficient to cover any deficit that may have resulted from delinquent assessments for any preceding year.

"It shall also be the duty of the board when making the levy in the years 1921, 1922 and 1923 to take into account the change of dates in the year 1924 and thereafter, and the board shall add a sufficient amount to the assessment levied in those years to take care of all obligations maturing before the due date of the assessment levied in 1924. The assessments, when collected by the county treasurer, shall constitute a special fund, or funds, as the case may be, to be called respectively, the 'Bond Fund of ................... Irrigation District,' the 'Contract Fund of ................... Irrigation District,' the 'Expense Fund of ................... Irrigation District,' and 'Coupon Warrant Fund of ................... Irrigation District': *Provided,* That in districts acting as fiscal agents for the United States or the state of Washington such assessments may also be paid to the secretary of such districts when so authorized by the board of directors and under such rules and regulations as the board may adopt. The secretary shall issue a receipt for such payments and shall be accountable on his official bond for the safekeeping of such funds and shall remit the same at least once each month to the treasurer of the county wherein the land is located on which payment was made. Upon receipt of such funds the county treasurer shall issue his official receipt therefor in like manner as though payment had been made direct to him by the land owner.

"In case of neglect or refusal of the board of directors to cause such assessment or levy to be made as herein provided, then the assessment shall be made, equalized and levied by the board of county commissioners of the county in which the office of the board of directors is situated, and said board of county commissioners shall cause an assessment-roll for the said district to be prepared and make the levy required by this chapter in the same manner and with like effect as if the same had been made by the said board of directors, and all expenses incident thereto shall be borne by the district. In case of neglect or refusal of the secretary of the district to perform the duties imposed by law, then the treasurer of the county in which the

office of the board of directors is situated must perform such duties, and shall be accountable therefor, on his official bond, as in other cases.

"At the time of making the annual levy in the year preceding the final maturity of any issue of district bonds, the board of directors shall levy a sufficient amount to pay and redeem all bonds of said issue then remaining unpaid.

"Section 7442. . . . On or before the first day of November in each year to and including the year 1923, and on or before the fifteenth day of January, in the year 1925, and each year thereafter the secretary must deliver the assessment-roll or the respective segregation thereof to the county treasurer of each respective county in which the lands therein described are located, and said assessments shall on that date become due and payable. Within twenty days thereafter the respective county treasurers shall each publish a notice in a newspaper published in their respective counties in which any portion of the district may lie, that said assessments are due and payable at the office of the county treasurer of the county in which said land is located and will become delinquent at 5 o'clock in the afternoon of the thirty-first day of December next thereafter in each year to and including the year 1923 unless sixty per cent thereof shall then have been paid, and that if this (is) allowed to become delinquent, a penalty of five per cent thereof will be added to the amount thereof, and if sixty per cent thereof be paid on or before the said thirty-first day of December, the remainder thereof will not become delinquent until April 30th next following: *Provided,* That beginning with the year 1925 and each year thereafter, said notice shall state that said assessments will become delinquent at 5 o'clock in the afternoon of the thirty-first day of May next thereafter unless fifty per cent thereof shall then have been paid, and that if thus allowed to become delinquent, a penalty of five per cent thereof will be added to the amount thereof, and if fifty per cent thereof be paid on or before the said thirty-first day of May, the remainder thereof will not become de-

linquent until November 30th next following. The notice shall be published once a week for four successive weeks and shall be posted within said period of twenty days in some public place in said district.

"Upon receiving the assessment-roll, the county treasurer shall prepare therefrom an assessment-book in which shall be written the description of the land as it appears in the assessment-roll, the name of the owner or owners where known, and if assessed to the unknown owners, then the word 'unknown' and the total assessment levied against each tract of land. Proper space shall be left in said book for the entry therein of all subsequent proceedings relating to the payment and collection of said assessment.

"Upon the payment of any assessment the county treasurer must enter the date of said payment in said assessment-book opposite the description of the land and the name of the person paying and give a receipt to such person specifying the amount of the assessment and the amount paid with the description of the property assessed. On the thirty-first day of December, of each year to and including the year 1923, unless sixty per cent shall have been paid as aforesaid, and on the thirty-first day of May in the year 1925 and each year thereafter unless fifty per cent shall have been paid as aforesaid, all unpaid assessments are delinquent, and thereafter the treasurer of the county in which the land is located must collect thereon for the use of the district the aforesaid penalty of five per cent and interest at the rate of twelve per cent per annum from the date of delinquency.

"It shall be the duty of the county treasurer of the county in which any land in the district is located to furnish upon request of the owner, or any person interested, a statement showing any and all assessments levied as shown by the assessment-roll in his office upon land described in such request, and all statements of general taxes covering any land in the district shall be accompanied by a statement showing the condition of irrigation district assessments against such lands: *Provided*, That the failure of the county treasurer to render

any statement herein required of him shall not render invalid any assessment made by any irrigation district or proceedings had for the enforcement and collection of irrigation district assessments pursuant to this act.

"It shall be the duty of the county treasurer of any county, other than the county in which the office of the board of directors is located, to make monthly remittances to the county treasurer of the county in which the office of the board of directors is located covering all amounts collected by him for the irrigation district during the preceding month.

"Section 7453. The county treasurer of the county in which is located the office of the irrigation district shall be and is hereby constituted ex-officio district treasurer of said district, and any county treasurer collecting or handling funds of the district shall be liable upon his official bond and to criminal prosecution for malfeasance and misfeasance, or failure to perform any duty herein prescribed as county treasurer or district treasurer, as is provided by law in other cases as county treasurer. It shall be the duty of the county treasurer of each county, in which lands of the district are located, to collect and receipt for all assessments and taxes levied as in this chapter provided. There shall be deposited with the county treasurer of the county in which the office of the board of directors is located, all sums collected for the defraying of the expenses of the district, whether said sums are collected by tolls, assessments or special assessments, and they shall be placed by the said county treasurer in the expense fund of the district. The said county treasurer shall also keep such other funds as may be required by law governing irrigation districts, or provided for by this chapter, and shall place therein moneys collected for such funds. The county treasurer shall pay out the moneys received or deposited with him or any portion thereof, upon warrants drawn on the several funds, signed by the president and countersigned by the secretary of the district, except the sums to be paid out of the bond fund upon the coupons or bonds presented to the treasurer. The said treasurer shall re-

port, in writing, on the first Monday in each month to the board of directors of the district, the amount of money held by him, the amount in each fund, the amount of receipts for the month preceding in each fund, and the amount or amounts paid out of each fund, and said report shall be filed with the secretary of the board. The secretary shall also report to the board, in writing, on the first Monday of each month, the amount deposited with the county treasurer belonging to the district during the preceding month, the amount of receipts for the month preceding and the amount and items of expenditures during the preceding month, and said report shall be filed in the office of the board."

[1] It is very evident that it was the intention of the legislature to require irrigation districts to operate on a cash basis. It is also evident that it was the purpose of the legislature to create a municipal corporation which would function, and which would be and remain a going concern. The primary object of an irrigation district is to furnish water to the land assessed, and if water is not furnished, then there can be no real consideration for the assessment. Clearly the situation revealed by this complaint arose either by reason of the failure of the taxing officials to comply with that part of the section which said

"The board shall also at the time of making the annual levy estimate the amount of all probable delinquencies on said levy and shall thereupon levy a sufficient amount to cover the same, and a further amount sufficient to cover any deficit that may have resulted from the delinquent assessment for any preceding year;"

or by reason of the failure of the land taxed to pay its assessments. If by reason of the first situation, this may be corrected by subsequent levy, and it would plainly be the duty of the taxing officers under the statute to make a sufficient levy to pay the deficit. If the situation arose by reason of the failure of the

land taxed to pay its assessments, then Rem. Comp. Stat., §§ 7442, 7443, 7444, and 7445 [P. C. §§ 3220-3223], provide the proper remedy. It must be remembered that the money raised by levy and assessment is placed in special funds: the "Bond Fund" the "Contract Fund," the "Expense Fund," and the "Coupon Warrant Fund."

The general rule is that, where money is raised and is payable out of a special fund, the fund in question shall not be called upon to pay any other or different charges, except those for which it is created. *Potter v. Black,* 15 Wash. 186, 45 Pac. 787; *Sheldon v. Purdy,* 17 Wash. 135, 49 Pac. 228.

The state of Colorado has an irrigation code in many respects similar to our own, and in the following well considered cases the supreme court of that state has expressed its views on the questions here presented. *Eberhart v. Canon,* 61 Colo. 340, 157 Pac. 189; *Rio Grande Junction R. Co. v. Orchard Mesa Irr. Dist.,* 64 Colo. 334, 171 Pac. 367; *Thomas v. Patterson,* 61 Colo. 547, 159 Pac. 34; *Henrylyn Irr. Dist. v. Thomas,* 64 Colo. 413, 173 Pac. 541, and *Chicago Title & Trust Co. v. Patterson,* 65 Colo. 534, 178 Pac. 13.

The conclusions reached by the court in the above cases are that under acts such as ours irrigation districts are operated on the fiscal year basis; that expense warrants for the current year are first calls on the expense fund for that year, and these decisions clearly point out the disastrous results which will follow any other construction. It seems to us that, taking this act in its entirety; considering the purpose to be accomplished; realizing that water must be furnished this year or there will be an entire failure of that purpose; that the land is without value except as supplied with water; that this municipal corporation which has been created

under state law for the purpose of enabling the inhabitants thereof to better their conditions and surroundings, will otherwise probably be finally destroyed; and having in mind that it is the duty of the court, when possible, to construe the various sections of legislative acts so that the real purpose of the act may be accomplished, we hold that the current expense warrants for operation and maintenance for the present year have the first call on the money raised by the levy and assessment for the expense fund for this year.

The judgment of the lower court is affirmed.

MACKINTOSH, C. J., MAIN, MITCHELL, and FULLERTON, JJ., concur.

## ON REHEARING.

[*En Banc.* October 13, 1927.]

PER CURIAM.—Upon a rehearing *En Banc*, a majority of the court adheres to the opinion heretofore filed herein. The judgment of the lower court is therefore affirmed.